UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

STEVEN W. OKKE,                                    Case No. DG 12-04035
                                                   Chapter 13
              Debtor.                              Hon. Scott W. Dales

_____/

## SUPPLEMENTAL OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            United States Bankruptcy Judge

## I. INTRODUCTION

In her motion to dismiss this bankruptcy case (the "Motion," DN 40), Nola J. Okke claims that her ex-husband, Debtor Steven W. Okke, is not eligible for relief under chapter 13, and that his bankruptcy schedules erroneously characterize the nature and amount of his debts. Ms. Okke contends that had the Debtor properly characterized the obligations in his schedules, his noncontingent, liquidated, unsecured debts would exceed the statutory ceiling of $360,475.00. The Debtor opposes the Motion.

The court has considered the parties' filings, including the affidavits the Debtor offered, and has heard oral argument. For the reasons given on the record in Grand Rapids on October 31, 2012, and amplified in this Supplemental Opinion and Order, the court will deny the Motion.

## II. JURISDICTION

The court has jurisdiction over the Debtor's case pursuant to 28 U.S.C. § 1334(a), and the Motion is a core proceeding. 28 U.S.C. § 157(b)(2)(A). The court's resolution of the Motion

does not implicate the constitutional concerns under Article III expressed in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), or more recently in *Waldman v. Stone*, Slip Op., No. 10-6497 (6th Cir. Oct. 26, 2012).

### III. ANALYSIS

As part of their divorce the Debtor and Ms. Okke entered into a Confidential Property Settlement Agreement (the "Settlement Agreement," DN 74, Exh. 2) in which the Debtor agreed to hold Ms. Okke harmless for all debts incurred in the operation of his business, both "personal and professional." *See* Settlement Agreement at ¶ 12. He also agreed that in consideration of Ms. Okke's forgoing her interest in the business and waiving spousal support, he would pay the mortgages on their marital home, as well as a mortgage on a piece of lakefront property across the street.  Ms. Okke argues that even if the court agrees with the Debtor that it is appropriate to characterize these debts as to those original creditors as "secured" and list them on Schedule D, the indemnification obligations he owes to her under the Settlement Agreement are unsecured, and therefore exceed the debt ceiling or eligibility limit prescribed in 11 U.S.C. §109(e).

Among the debts Ms. Okke claims should be included in the eligibility computation are: (1) a debt owed to Northpointe Bank (the "Northpointe Debt") scheduled for $60,735.00 for the lakefront property; (2) a debt owed to Independent Bank (the "Independent Debt") scheduled for $85,000.00 as the first mortgage on their former marital home; (3) a debt owed to PNC Bank (the "PNC Debt") scheduled for $47,575.00 for a second mortgage on their marital home; and (4) a business-related debt to Community South in the amount of $585,500.00 (the "Community South Debt").

Likewise, Ms. Okke complains that on Schedule E the Debtor only listed $1.00 as owed to her when, in fact, the Debtor's hold-harmless obligations to her should include the Northpointe, PNC and Independent Debts, along with various other debts incurred personally or through the Debtor's businesses.  For example, she argues that the Community South  Debt listed on Schedule F as $1.00 should really be scheduled at $585,500.00, and so should any income, sales, withholding, and payroll taxes due to the State of Michigan arising from the former spouses' business entities.  When the Debtor's hold-harmless obligations to her are added to the other debts, Ms. Okke claims the noncontingent, liquidated, unsecured obligations of the Debtor equal about $1,083,245.52, well above the statutory threshold.  *See* Motion at p. 4, ¶ 7(b) (enumerating the debts Ms. Okke regards as noncontingent, liquidated and unsecured).

The Debtor, on the other hand, argues that he filed his schedules in good faith. He explained that he listed the Northpointe Debt as secured because, on the petition date, it was secured by the lakefront property that he formally owned with his ex-wife (though he had agreed in the divorce proceeding to quitclaim it to her).  Northpointe Bank has not yet foreclosed.  As for the Independent Debt, it was secured by a mortgage on the marital home, which the creditor foreclosed upon pre-petition, bidding in its entire debt.  The Debtor characterized this debt as secured because he, or his estate, retains a statutory right of redemption, and because the state of title post-foreclosure, but before the expiration of redemption rights, is admittedly cloudy.

The Debtor argues that the PNC Debt includes a second mortgage on the marital home, junior to the mortgage securing the Independent Debt. Even though Independent Bank completed its foreclosure against the marital home, Debtor's counsel stated that he:

> . . . considered the debt to PNC Bank as secured in that it was
> a second mortgage against property with an estimated value of

> $120,000.00 and a first mortgage of $85,000.00. Therefore
> PNC Bank's debt is, for the most part, secured.

*See* Brief in Support of Debtor's Response to Creditor, Nola J. Okke's Motion to Dismiss and Objection to Plan Confirmation ("Debtor's Brief") at p. 10, ¶ 3.

Without impugning the Debtor's good faith, the court rejects the notion that it should treat Independent Bank as a secured creditor after the foreclosure because the foreclosure extinguished the bank's mortgage, and any redemption would not revive the lien. *Grass Lake Golf Club, LLC v. GTR Jackson Properties, LLC*, Slip Op., Doc. No. 265408, 2008 WL 1733779 (Mich. Ct. App. Apr. 15, 2008) (*citing Senters v. Ottawa Savings Bank*, 503 N.W.2d 639 (1993)) (foreclosure discharges the mortgage being foreclosed). And, although the Independent Debt was fully satisfied when the bank bid in its claim,[1] the foreclosure also triggered part of the Debtor's hold-harmless obligation to his ex-wife, an obligation the court regards as noncontingent, liquidated, and unsecured. Therefore, to a legal certainty, the Independent Debt is not a secured claim.

Similarly, the prepetition foreclosure of the first mortgage against the marital home promises to extinguish the second lien securing the PNC Debt, leaving that lender (as of the petition date) with a statutory right of redemption that might revive the junior lien. Realistically, however, following foreclosure a junior lienor can expect to assert little more than an unsecured (noncontingent and liquidated) deficiency claim in the mortgagor's bankruptcy, rather than a meaningful interest in its former collateral. It is true that the foreclosure by itself does not

---

[1] *In re Young*, 48 B.R. 678, 682 (Bankr. E.D. Mich. 1985) (once a foreclosure sale has occurred, the purchaser is simply not the holder of a claim); *cf. In re Miller*, 459 B.R. 657, 673 (6th Cir. BAP 2011) (under Michigan law, lender who bids at foreclosure sale must credit mortgagor for bid).

instantly or completely extinguish the rights of the mortgagor or junior lienors.[2] Nevertheless, if the court must characterize the PNC Debt as of the petition date as either secured or unsecured, the claim is more akin to the latter than the former, given the *de minimis* interest remaining in the Debtor after foreclosure.[3]  Giving Ms. Okke the benefit of the doubt on this point since the Debtor has the burden of establishing eligibility, and viewing the PNC Debt pragmatically, the court included the PNC Debt among the Debtor's noncontingent, liquidated, *unsecured* claims.

As for the debts actually listed on Schedule F, the Debtor claims that the Community South Debt was incurred by the Debtor's businesses —separate corporate entities— and to the best of his knowledge, he never signed a personal guaranty. Even if there were a guaranty, he would regard that obligation as contingent (and therefore excluded from the eligibility calculation) because the corporate borrowers are current.  Similarly, according to the Debtor, any unpaid Michigan withholding tax debt incurred by these entities had not been assessed against the Debtor *personally* as of the filing date, making that debt contingent as well.

The parties agree that the Sixth Circuit's opinion in *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d. 751 (6th Cir. 1985), outlines the court's task in resolving challenges to a chapter 13 debtor's eligibility.  Briefly, as the court explained during the hearing,

---

[2] *Detroit Fidelity & Sur. Co. v. Donaldson*, 237 N.W. 380, 381 (Mich.1931) (all the interest which the [mortgagor] had in the mortgaged property was lost to her when the time for redemption . . . had expired."); *In re Parlovechhio*, 315 B.R. 694, 697 (Bankr. E.D. Mich. 2004) (a junior mortgagee's rights are not extinguished until the expiration of the redemption period).

[3] Unless the property is timely and properly redeemed, a sheriff's deed vests in the grantee "all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage or at any time thereafter." M.C.L. § 600.3130(1); *see also id.* § 600.3236.  After foreclosure but before the statutory redemption  right expires, the purchaser at a foreclosure sale has "an interest or title, equitable in character and with nothing to be done on his part to make it absolute if it is not redeemed within the period of time prescribed by law." *Dunitz v. Woodford Apt. Co.*, 209 N.W. 809 (Mich. 1926). Under 11 U.S.C. § 541(d), this equitable interest is excluded from the property of the debtor-mortgagor's bankruptcy estate, though the debtor's legal interest and redemption rights are included. Moreover, the Sixth Circuit holds that a chapter 13 debtor cannot "cure" a mortgage under § 1322(b) after a foreclosure sale. *In re Glenn*, 760 F.2d 1428 (6th Cir. 1985).

the Sixth Circuit analogizes the bankruptcy court's eligibility determination to a district court's determination of its diversity jurisdiction.   Under *Pearson*, a bankruptcy court must ordinarily accept a debtor's schedules when determining eligibility unless the court finds that they were not filed in good faith.  Indeed, the Sixth Circuit states:

> [A] court should rely primarily upon the debtor's schedules checking only to see if the schedules were made in good faith on the theory that section 109(e) considers debts as they exist at the time of filing, not after a hearing.

*Id.,* 773 F.2d at 756; *see also In re Faulhaber*, 269 B.R. 348 (Bankr. W.D. Mich. 2001).  The Bankruptcy Code and Rules contemplate rapid progress in a chapter 13 case, with minimal delays between the petition date and confirmation.  *See, e.g.*, Fed. R. Bankr. P. 3015 (a plan "shall be filed within 15 days [after the filing of the petition] and such time shall not be extended except for cause shown....."); 11 U.S.C. § 1326 ("Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.").  Thus, within forty-five days of the chapter 13 bankruptcy petition, the debtor should be making payments under a proposed plan.  Although some delays in confirmation are inevitable, and although the court need not accept legally unsupportable arguments when considering eligibility,[4] to hold a "mini trial" on the value and nature of each claim in order to determine eligibility would undermine the purpose of these pronouncements.

Therefore, after taking a realistic look at the Debtor's schedules and affidavits, and considering the parties' written and oral arguments, the court finds that the Debtor's rationale for listing his obligations as he did on the date of filing was principled and in good faith. As delineated in the *Pearson* case, 11 U.S.C. § 109(e) provides that the eligibility computation be

---

[4] *In re Redburn*, 193 B.R. 249 (Bankr. W.D. Mich. 1996).

based on the date of filing the petition; it states nothing about computing eligibility after a hearing on the merits of the claims.

Although the court recognizes that a chapter 13 debtor has the burden of proving eligibility for relief, at the hearing the court approached the problem by engaging in a colloquy with counsel regarding the debt listing that appears in the Motion at page four, paragraph 7. The parties and the court agreed that most of the enumerated debts qualified as noncontingent, liquidated, and unsecured debts that count towards the $360,475.00 ceiling prescribed in 11 U.S.C. § 109(e). Indeed, the court included in its eligibility calculation all but four debts from Ms. Okke's list —the Community South Debt ($585,500.00), certain Michigan sales tax withholding debt ($78,586.68), the Northpointe Bank Debt ($61,222.10), and certain U.S. Department of Labor (Wage & Hour Division) debt ($3,356.00).

The court excluded the Community South Debt based on the affidavit of the Debtor's counsel verifying (after some inquiry) that the Debtor did not sign any guaranty of this debt and has no personal obligation to repay it. Under the principle of limited liability, shareholders are not generally liable for the debts of the corporations in which they hold an interest, absent fraud or a contractual undertaking. Based on the affidavits,[5] the court finds that the Community South Debt should not count towards the eligibility threshold because, as to the Debtor on the date of filing, it does not appear to be a debt of the Debtor at all. Of course, under the *Pearson* rubric, this finding does not preclude Community South or any other creditor from later seeking to establish the Debtor's personal liability for this debt.

---

[5] Fed. R. Civ. P. 43(c).

The court excluded the Northpointe Debt from the eligibility calculation for several reasons. Although it may be the case that the Debtor ought to have transferred that property to Ms. Okke, and perhaps may still be required to do so, as of the commencement of the case he had not. Nor does it appear that Ms. Okke has recorded the divorce judgment to effect the transfer. Under the circumstances, the Debtor had a good faith basis for treating the Northpointe Debt as secured (as to Northpointe Bank). Of course, the Northpointe Debt has an impact on the Debtor's hold-harmless or indemnification debt to Ms. Okke under the Settlement Agreement, but at this point, the court cannot say whether that lender will look to Ms. Okke for repayment and if so, how much it will seek from her after realizing on its collateral. This aspect of the Debtor's debt to Ms. Okke —the extent to which he must hold her harmless for the Northpointe Debt— is contingent and unliquidated, and for this reason, the court did not count it against the § 109(e) threshold.

With respect to the state business taxes and the federal labor taxes, the Debtor asserted without much controversy that these debts are contingent because the taxing authorities have not yet assessed them against him personally. For purposes of the *Pearson* eligibility analysis, the court accepts the argument and therefore excludes these amounts from the calculation also.

Having considered Ms. Okke's enumeration on the fourth page of her Motion, and excluding the four debts described immediately above, the court concludes that the Debtor has noncontingent, liquidated, unsecured debts in the amount of $350,003.25[6] —less than the $360,475.00 disqualifying threshold prescribed in 11 U.S.C . § 109(e).

---

[6] In rendering its oral ruling, the court indicated that the sum of the noncontingent, liquidated, unsecured debts equaled $339,573.48, a figure that failed to take into account the debt to Harley Davidson Credit Corp.

IV. <u>CONCLUSION AND ORDER</u>

The Bankruptcy Code does not require any more than a good faith effort on the part of the Debtor to give the court and his creditors an accurate financial picture as of the date of filing, even though "some later resolution of the conflict might render more certain the precise nature of the debts themselves . . ." *Pearson,* 773 F.2d at 758.  The court is satisfied that the Debtor prepared his schedules in good faith, and that he is eligible for relief under chapter 13.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 40) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Supplemental Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Steven W. Okke, William J. Napieralski, Esq., Nola J. Okke, Perry Pastula, Esq. and Brett N. Rodgers, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated November 1, 2012**



Scott W. Dales
United States Bankruptcy Judge